UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:20-cr-00077-JAW-1 |
| | ) | |
| MUKONKOLE HUGE KIFWA | ) | |

**ORDER ON JOINT MOTION TO STRIKE**

Rejecting the joint recommendation of the Government and the Defendant, the Court declines to permanently seal documents currently under seal and orders the parties to explain within seven days why all sealed docket entries should not be unsealed, given that the Defendant is now released from incarceration and the presumption of public access to judicial records applies.

**I. BACKGROUND**

    **A. Crime and Punishment**

On October 22, 2022, a federal grand jury charged Mukonkole Huge Kifwa in a two-count indictment with engaging in conspiracies to commit wire and access device fraud. *Indictment* (ECF No. 14). On November 4, 2020, Mr. Kifwa entered into a plea agreement in which he agreed to plead guilty to the wire fraud count, the access device count to be dismissed at the sentencing hearing. *Plea to Plead Guilty (With Stips., Appeal Waiver, Cares Act Waiver, and Version of the Offense)* (ECF No. 28). On November 10, 2020, United States District Court Judge D. Brock Hornby held a Rule 11 hearing and accepted Mr. Kifwa's guilty plea to count one. *Min. Entry* (ECF No. 31). Before the sentencing hearing, the Government declined to move under United States Sentencing Commission Guideline § 5K1.1 for a downward departure,

and at the presentence conference on March 16, 2021, defense counsel raised Mr. Kifwa's intention to proceed with a *Landrón Class* argument. *Tr. of Proceedings* at 10:20-25 (ECF No. 63). Before the sentencing hearing, the Government presented the Court with a document setting forth Mr. Kifwa's cooperation so that he could argue for a more lenient sentence under 18 U.S.C. § 3553(a) pursuant to *United States v. Landrón Class*, 696 F.3d 62 (1st Cir. 2012).

On April 15, 2021, Mr. Kifwa filed two sentencing memoranda: one, unsealed, discussed his sentencing arguments but for the *Landrón Class* argument, and a second, sealed, discussed his cooperation and the *Landrón Class* argument. *Def.'s Mem. in Support of Sentencing* (ECF No. 45) (*Def.'s Sentencing Mem.*); *Def.'s Mem. for Ct. to Consider the Extent of the Def.'s Cooperation as a Sentencing Factor* (ECF No. 46) (*Def.'s Sealed Sentencing Mem.*). In his public sentencing memorandum, Mr. Kifwa observed that the Court should consider that he will likely be deported upon release from incarceration. *Def.'s Sentencing Mem.* at 3 ("Given that Mr. Kifwa will not reside here after his release, a sentence of 40 months is both reasonable and sufficient"). In his sealed sentencing memorandum, Mr. Kifwa emphasized the risk of retribution during his incarceration if his cooperation were public, noting that while in prison, he had already been subject to a "violent assault as a result of his being a cooperator." *Def.'s Sealed Sentencing Mem.* at 2. On April 15, 2021, Judge Hornby issued a sealed order, sealing the cooperation sentencing memorandum. *Order* (ECF No. 48). On April 23, 2021, the Government filed a brief sentencing

memorandum, urging the Court to impose a forty-month sentence without mentioning Mr. Kifwa's cooperation. *Gov't's Sentencing Mem.* at 1-2 (ECF No. 49).

The case came for sentencing by videoconference on April 28, 2021. *Min. Entry* (ECF No. 50). *Tr. of Proceedings* (ECF No. 67). In his guideline findings, Judge Hornby found that the guideline sentence range was fifty-seven to seventy-one months, that Mr. Kifwa was unable to pay a fine, that the term of supervised release was two to five years, that the special assessment was $100, and that restitution was appropriate in the amount of $247,583.33. *Id.* at 6-10. At the end of the hearing, Judge Hornby imposed the jointly recommended sentence of forty months of incarceration, five years of supervised release, a $100 special assessment, and $247,583.33 in restitution. *J.* (ECF No. 53).

B.   **Cooperation and *Landrón Class***

During the sentencing hearing, there were several references to the *Landrón Class* requested downward departure. *See Tr. of Proceedings* (ECF No. 67). Judge Hornby listed Attorney Francis' *Landrón Class* addendum as part of the materials he had reviewed. *Id.* at 7:25-8:1. Judge Hornby described as one of the issues whether he should grant a variance in light of the cooperation Mr. Kifwa had afforded. *Id.* at 9:25-10:1. At the outset of the sentencing argument, the Government asked whether there would be a sidebar to discuss the sealed motion, and Judge Hornby suggested it was not necessary to do so, and the *Landrón Class* discussion could be subject to a later motion to seal. *Id.* at 10:15-11:6. The Government referred to Mr. Kifwa's talking to federal law enforcement, his cooperation, and his subsequent decision not

3

to cooperate. *Id.* at 12:13-13:21. The Government also referred to *Landrón Class* and explained its decision not to move under § 5K1.1 for a downward departure. *Id.* at 14:22-15:8. In urging a forty-month sentence, Mr. Kifwa's counsel also mentioned his cooperation with law enforcement. *Id.* at 17:20 - 18:2. Finally, twice during his remarks, Judge Hornby briefly referred specifically to *Landrón Class*. *Id.* at 29:24-25; 30:12-16. All these references to Mr. Kifwa's cooperation are currently redacted or sealed.

On May 5, 2021, acting pro se, Mr. Kifwa appealed his sentence. *Notice of Appeal* (ECF No. 55). On April 13, 2023, the Court of Appeals for the First Circuit affirmed Mr. Kifwa's sentence. *J.* (ECF No. 89). On September 9, 2021, Mr. Kifwa, acting through counsel, moved to seal references to his cooperation in the transcripts. *Def.'s Mot. to Strike Cooperation Language from the Trs.* (ECF No. 69). On September 13, 2021, Judge Hornby granted in part and denied in part Mr. Kifwa's motion to seal. *Order on Def.'s Mot. to Seal Cooperation Language in Tr.* (ECF No. 71). Judge Hornby explained that he denied a part of the motion based on the public's right to know the reasons for a judicial sentence. *Id.* at 1-2. On October 7, 2021, Mr. Kifwa – again through counsel – filed a motion to seal references to his cooperation in the transcripts, this time pending appeal. *Def.'s Mot. to Stay Publication of the Sentencing Tr. Pending the Outcome of the Appeal* (ECF No. 82). On October 7, 2021, Judge Hornby granted the motion to seal pending appeal, noting that although he believed his ruling was correct, he did not want to prejudice Mr. Kifwa's rights pending appeal. *Order* (ECF Nos. 83, 84).

### C. Appeal and Error

On April 14, 2023, the Court of Appeals for the First Circuit vacated Judge Hornby's September 13, 2021 order on Mr. Kifwa's sealing motion. *J.* (ECF No. 90). The First Circuit concluded that Judge Hornby erred "by relying on a categorial rule that [he] would never redact a portion of its explanation of a criminal sentence." *Id.* at 1. The appellate court explained that the "rights of public access under both the common law and the First Amendment are qualified rights." *Id.* District courts are required to make a "fact specific balancing of interests" when presented with sealing requests. *Id.* The First Circuit observed that Mr. Kifwa had completed his term of incarceration and the Government had filed a notice of intent to remove him on or after March 23, 2023. *Id.* at 2. The First Circuit noted that these two factors – his release and potential removal – may "alter the balance of interests relevant to the request to redact the two phrases at issue." *Id.* The Court of Appeals remanded the case to this Court for proceedings consistent with its opinion. *Id.* On May 8, 2023, the district court received the First Circuit mandate. *Mandate* (ECF No. 92).

### D. Remand

After receiving the remand order, on May 9, 2023, the Court[1] ordered the parties to file simultaneous memoranda addressing the issues the First Circuit raised in its opinion. *Order* (ECF No. 93).

## II. THE JOINT POSITION OF THE PARTIES

---

[1] Judge Hornby retired while this matter was on appeal. On remand, the Clerk's Office randomly assigned this case to this Judge.

5

On May 23, 2023, the parties filed a joint memorandum in response to the Court's May 9, 2023 order, arguing that the Court should grant the redaction motion despite the fact that Mr. Kifwa has been released from custody. *Jt. Supp. Mot. in Support of Def.'s Unopposed Mot. to Strike* (ECF No. 95) (*Jt. Mot. to Strike*). The joint memorandum, consisting of a page and a half, reiterates the practice of the District to redact from public transcripts references to a defendant's cooperation and then summarily states:

> It is the position of the parties that, in order to protect the safety of the Defendant, the Court's two references to "Landron Class" should be treated in the same protective manner and be redacted from the sentencing transcript despite the fact the Defendant has since completed his term of imprisonment imposed.

*Id.* at 2.

### III.   DISCUSSION

#### A.   Conspiracy to Commit Mail Fraud Involving a Financial Institution

##### 1.   The History and Characteristics of Mukonkole Huge Kifwa

Mukonkole Huge Kifwa is a thirty-eight-year-old native of Lumbubashi, the Democratic Republic of the Congo (The DRC). *Second Revised Presentence Investigation Report* at 3 (ECF No. 41) (*PSR*). Mr. Kifwa remains a citizen of The DRC; he is not a citizen of the United States. *Id.* Mr. Kifwa's personal background is extremely murky, in part because he has repeatedly changed his responses to basic background facts. *See id.* ¶¶ 49-51. For example, Mr. Kifwa has been also known by at least four aliases. *Id.* ¶ 1. However, some consistent facts emerge. Mr. Kifwa

grew up in The DRC and graduated from high school there. *Id.* ¶ 54. In 2005, when he was about twenty-one, he emigrated to Canada, where he stayed through 2013. *Id.* ¶ 58. In 2013, he applied for and was granted a visa to the United States, and he has remained here since then. *Id.* ¶ 40. As of 2021, Mr. Kifwa had four children, ranging in ages from sixteen to eight, with four different women. *Id.* ¶ 49. His children live in Canada and Georgia. *Id.*

For sentencing purposes, the most striking aspect of Mr. Kifwa's background is his criminal history. Between 2008 and 2011, while in Canada, by the Court's count, Mr. Kifwa was convicted in Canadian courts of nine counts of fraud, theft, impersonation, and other crimes, including three failures to comply with probation orders. *PSR* ¶¶ 34-39.

On October 21, 2015, a federal grand jury in the District of Maine charged Mr. Kifwa in a seven-count indictment with visa fraud, two counts of possession of firearms by a non-immigrant alien, three counts of bank fraud, and one count of making a false statement to a government agent. *United States v. Kifwa*, No. 2:15-cr-00177-DBH-1, *Indictment* (ECF No. 34). On January 14, 2016, after a four-day jury trial, a federal jury convicted Mr. Kifwa on all eight counts. *Jury Verdict* (ECF No. 93). On June 13, 2016, Judge Hornby sentenced Mr. Kifwa to forty-six months of concurrent incarceration, no period of supervised release because he was likely to be deported, a $100 special assessment, and restitution in the amount of $15,090.09. *J.* at 1-6 (ECF No. 118); *see Tr. of Proceedings* at 36:6-8; 73:22-23 (ECF No. 141).

    2.    **The Nature and Circumstances of the Offense**

During the investigation of the 2015 case, law enforcement discovered that Mr. Kifwa was involved in a second fraud scheme. *PSR* ¶ 7. This scheme originated in London, England, and involved the illegal use of fraudulently obtained credit cards. *Id.* ¶¶ 6-11. Although he took direction from a contact in London, the Probation Office concluded that Mr. Kifwa was the leader of the conspiracy in the United States and that he surprisingly continued to perpetrate this fraud when he was imprisoned on the 2015 indictment. *Id.* at ¶¶ 8-11. As a result of the conspiracy, Lloyds Bank of London sustained a loss of $247,583.33 and individual accounts holders suffered initial losses that Lloyds made good on. *Id.* ¶ 15.

### B. Legal Principles

The seminal case in the First Circuit on the right of public access to judicial records is *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013). Under *Kravetz*, the first issue is typically whether the documents fit within the definition of public records. *Id.* at 54. As the First Circuit wrote, this question involves determining whether the documents are "materials on which the court relies in determining the litigants' substantive rights." *Id.* (quoting *In re Providence J. Co.*, 293 F.3d 1, 9-10 (1st Cir. 2002)). Once a court determines that the involved documents are judicial records, a presumption of public access applies. *Id.* at 56. Once the right of public access presumptively applies, a court must "carefully balance the presumptive right of access against the competing interests that are at stake in a particular case." *Id.* at 59. But the First Circuit has cautioned that "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the

common-law right of access." *Id.* (quoting *In re Providence J.*, 293 F.3d at 10 (quoting *FTC v. Standard Fin. Mgmt.*, 830 F.2d 404, 410 (1st Cir. 1987))).

Following *Kravetz*, district courts in Maine have typically concluded that a defendant's cooperation with law enforcement is sufficient to overcome the presumption of public access during an inmate's period of incarceration. The possibility of retribution within the prison system is real and a proper area of concern. Nevertheless, the same concerns do not exist in the same way once an inmate is released. In 2018, Judge Hornby concluded in *United States v. Commoss*, No. 2:18-cr-08-DBH, 2018 U.S. Dist. LEXIS 231120 (D. Me. June 19, 2018) that to justify the sealing of a judicial record after an inmate has been released, the movant must demonstrate "that something like an ongoing investigation or a particularized risk of violence is necessary to justify sealing documents." *Id.* at *2-3.

### C.  Application of the Law to the Facts in this Case

In their joint motion to continue the sealing, the parties have made no attempt to justify a continued sealing now that Mr. Kifwa is no longer incarcerated for his federal crimes. *Jt. Mot. to Strike* at 1-2. The joint motion is cursory and conclusory, barely two pages long, and inadequate to the task. The joint motion fails to mention the right of public access to judicial records, fails to cite or address *Kravetz*, indeed (other than a reference – without citation - to *Landrón Class*) fails to cite any caselaw, fails to reveal where Mr. Kifwa is – whether he has returned to The DRC, is being held on an immigration hold, or is released on supervised release, fails to indicate whether he is undergoing deportation proceedings, fails to describe any

particularized risk he now faces if the judicial records were made public. In short, the Government has failed to provide any information which would allow the Court to perform its balancing analysis. On this basis alone, applying the presumption of public access, the Court would deny the motion and would unseal all sealed documents, including the complete presentence conference and sentencing hearing transcripts.

The parties' joint memorandum is ironic because the parties have palpably failed to comply with the Court of Appeals' mandate they themselves sought. Mr. Kifwa successfully appealed Judge Hornby's refusal to seal all evidence of cooperation in the transcripts, and the Government concurred in Mr. Kifwa's appeal. *First Cir. J.* at 1 ("The Government concurs with Kifwa that the district court erroneously denied the request to redact the two phrases at issue"). The First Circuit determined that Judge Hornby had failed to perform the necessary balancing analysis among the competing interests, to assess reasonable alternatives to sealing, and to make findings where necessary. *Id*. The First Circuit observed that "Kifwa has completed his prison sentence and that the government filed a notice of intent to remove him on or after March 1, 2023." *Id*. at 2. The First Circuit noted that these "developments may alter the balance of interests relevant to the request to redact the two phrases at issue." *Id*. But the appeals court wrote that the "record is silent" on the effects of these developments on the parties' interests. *Id*. The First Circuit remanded to this Court for fact-finding on whether the "current state of affairs" justifies continued redaction.

The record is still silent on these issues. The parties have ignored the First Circuit's mandate and have presented the Court on remand with no information that would allow the Court to perform the mandated balancing analysis. In effect, having successfully complained that Judge Hornby failed to perform the balancing analysis for a sealing order, the parties have presented the Court with a joint agreement that asks the Court to do on remand precisely what they complained constituted legal error: to issue a categorical sealing order based now on their say-so without balancing the competing interests.

Although Mr. Kifwa's argument for permanent sealing is understandable, the Court is mystified by the Government's position since the Government must consider the public interest in its legal positions. Here, the Government's seemingly cavalier urging of permanent sealing even after a defendant is released, runs against its own position in countless cases where the Government has consistently moved the Court to seal evidence of cooperation only for the length of time an inmate is incarcerated. *See United States v. Corina Fall*, 2:19-cr-219-JAW, *Motion to Seal* (April 29, 2021) (ECF No. 127) (requesting Cooperation Agreement "be sealed for the duration of the Defendant's term of incarceration"); *United States v. Ramon Dominguez*, 2:18-cr-128-JAW, *Motion to Seal* (October 4, 2021) (ECF No. 68) (requesting motion "be sealed until the defendant completes any term of imprisonment imposed by the Court"); *United States v. Paul Robinson*, 2:14-cr-5-GZS, *Motion to Seal* (February 4, 2015) (ECF No. 60) (requesting "documents be sealed until the completion of the defendant's term of imprisonment or until further order of the Court").

11

In fact, the Court can recall no other case where the Government has urged the Court to seal evidence of cooperation beyond a term of incarceration, and if there is such a case, none where it was successful. Consistent with this practice, the Court has adopted a protocol whereby once an inmate is released, it issues an order, notifying the parties that it is going to unseal the documents in the case, and giving the parties an opportunity to object. *See United States v. Danny Rydle*, 2:19-cr-00073-JAW, *Order* (ECF No. 73). Although defendants sometimes object to the unsealing, the Court can recall no case where the Government has objected to the unsealing of documents in response to such a post-incarceration order. *See id.*, *Order on Remand* (ECF No. 134).

The Government's position on unsealing in *Rydle* is characteristic of its past practice. After Mr. Rydle was released from incarceration, the Court issued its standard order, indicating that it would unseal the cooperation documents unless a party objected. *Order* (ECF No. 73). Mr. Rydle objected. *Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 77). The Government strenuously objected to Mr. Rydle's motion for continued sealing since Mr. Rydle had been released from custody. *Gov't's Resp. to Def.'s Obj. to Unsealing Certain Docket Entries* (ECF No. 79). To continue to seal cooperation evidence on the docket after a defendant has been released, the Government wrote "would run wildly afoul of both this Court's standard practice as well as firmly established First Circuit precedent." *Id.*

Based on the facts in this case, where the defendant is not merely released from incarceration, but is likely to have been or shortly to be deported, the Court

seeks a compelling explanation from the parties as to why the District's standard unsealing practice should be abrogated for Mr. Kifwa. It is possible that the parties could present the Court with evidence that would allow the Court to conclude that Mr. Kifwa continues to be subject to a risk of harm if his cooperation were disclosed on the public docket. There may still be an investigation of the conspiracy into his wire fraud conspiracy, he may have been the recent subject of in-prison violence, he may be detained in an immigration hold, which could conceivably present retribution issues similar to those while he was incarcerated. At the same time, the events that formed the basis of the criminal charge against Mr. Kifwa occurred about eight years ago and, if there is a concern about current particularized retribution, it is not a matter of record.

It strikes the Court that in this case, the public has a right to know why the federal judge sentenced Mr. Kifwa to forty months of incarceration and why the Government and Mr. Kifwa jointly recommended the more lenient sentence. Here is a man who committed a series of frauds in Canada, committed visa fraud to enter and stay in the United States in 2013, once in the United States, engaged in more fraudulent conduct, and within five years, stood convicted of nine federal crimes, resulting in restitution orders totaling $262,673.42, and even continued to commit crimes when in prison. Mr. Kifwa faced a guideline sentence range of imprisonment of fifty-seven to seventy-one months, but an eminent federal judge sentenced him to only forty months, based on a joint sentencing recommendation of the Government and Mr. Kifwa. Thus, Mr. Kifwa received less time (forty months) for committing a

13

$247,000 fraud than he did for committing a prior more modest $15,000 fraud (forty-six months). None of this would make any sense to the public without knowledge that during the investigation and prosecution of his later charged fraud, Mr. Kifwa engaged in time limited but significant cooperation with the authorities and thus merited a lower than guideline sentence. Thus, the information still under seal is not peripheral, it runs to the heart of Judge Hornby's judicial decision-making.

## IV.   CONCLUSION

In *Kravetz*, the First Circuit observed that "Courts have long recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" *In re Providence J.*, 293 F.3d at 9 (quoting *Siedle v. Putnam Invs.*, 147 F.3d 7, 19 (1st Cir. 1998)). The Court views the joint positions of the Government and the Defendant in this case as inimical to the right of public access, and as this case demonstrates, to leave the public permanently uninformed about the real reason a person received a federal sentence breeds unwarranted disrespect, confusion, and cynicism about the federal criminal justice process.

The Court ORDERS the Government and the Defendant to file adequate memoranda within seven days of the date of this Order to explain why the Court should not unseal all current sealed docket entries in this matter. In accordance with *Commoss*, as Mr. Kifwa is no longer incarcerated, the Court is seeking "something like an ongoing investigation or a particularized risk of violence . . . to justify sealing documents." 2018 U.S. Dist. LEXIS 231120, at *2-3.

To maintain the parties' right to challenge this order on appeal, the Court orders this Order sealed pending further order of the Court.

SO ORDERED.

/s/ John A. Woodcock, Jr.  
JOHN A. WOODCOCK, JR.  
UNITED STATES DISTRICT JUDGE

Dated this 5th day of June, 2023